UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

FRANK DE MICHELE,                                                    09 CV 9334 (PGG)(HP)

                                    Plaintiff,

                                                                    **PLAINTIFF'S RESPONSE**
                                                                    **TO DEFENDANT**
            -against-                                               **WESTCHESTER'S R. 56.1**
                                                                    **STATEMENT OF**
                                                                    **MATERIAL FACTS**

CITY OF NEW YORK, COUNTY OF WESTCHESTER,
TIMOTHY BUGGE, in his individual and official capacity as a
Deputy Inspector in the New York City Police Department,
DEODAT URPRASAD, in his individual and official capacity as
a Captain in the New York City Police Department, ADAM
MELLUSI, in his individual and official capacity as a Sergeant
in the New York City Police Department, ROGER DiCARLO
and ANDREW NYBERG, in their individual and official
capacities as police officers in the New York City Police
Department, WILLIAM T. McGUINNESS, in his individual and
official capacity as a Sergeant in the Westchester County
Department of Public Safety, BRIAN P. TIERNEY, GEORGE
O. RUIZ, CHRISTIAN M. GUTIERREZ, MITCHELL B.
SERLIN, CHRISTOPHER M. LIEBERMAN, MICHAEL N.
BRADY and RICHARD E. PUCILLO, in their individual and
official capacities as Police Officers in the Westchester County
Department of Public Safety, and DOES 1-20, whose identities
are not yet known,

                                    Defendants.

-------------------------------------------------------------------------X

            Plaintiff, FRANK DE MICHELE, by his attorneys, LAW OFFICE OF TODD J.

KROUNER, hereby sets forth his objections and responses to the Statement of Material Facts

pursuant to Local Rule 56.1, dated November 21, 2011, by the County of Westchester

("County"), William T. McGuinness, Brian P. Tierney, George O. Ruiz, Christian M. Gutierrez,

Mitchell B. Serlin, Christopher M. Lieberman, Michael N. Brady and Richard E. Pucillo, in their

individual and official capacities (collectively referred to herein as "Westchester Defendants"):

## GENERAL RESPONSES

1.      Defendants' Rule 56.1 Statement of Material Facts contains supposed "facts" that are either: (1) not supported by admissible evidence; (2) not "facts" at all, but rather mere legal conclusions; (3) "supported" by citations to the record that do not support the alleged "fact;" and/or (4) completely immaterial to the issues in this case.

2.      The term, Immaterial, is defined as: tending to prove some fact that is not properly at issue.

3.      The term, DKI, is defined as: deny upon information and belief facts that are not capable of independent verification by Frank DeMichele.

4.      Plaintiff objects to the extent that the supposed "facts" are overbroad, non-descriptive and confusing.

5.      Plaintiff objects to the extent that the "factual" assertions are not set forth in individually numbered paragraphs, but instead are compound.  Individual Rules of Practice of United States District Court Judge Paul G. Gardephe, 4(A).

6.      Plaintiff objects to the extent that terms such as "suspect," "suspect vehicle," and "white Mercedes Benz" are not defined.  Therefore, questions of fact are created.

## SPECIFIC RESPONSES

The numbered paragraphs below correspond to the numbered paragraphs set forth in Defendants' Statement of Material Facts, dated November 21, 2011.  Notwithstanding the general objections set forth above:

1.      Admit that on Sunday, January 18, 2009, Plaintiff Frank DeMichele ("Plaintiff") and his mother, Margaret Bonura ("Ms. Bonura"), resided at 1164 Edison Avenue, Bronx New York (the "Residence").

2.    Admit.

3.    Admit.

4.    The assertions are Immaterial. Deny to the extent that Landlord's "family" is not a
      defined term. Notwithstanding the foregoing, Plaintiff admits that the Landlord and her
      two sons, including Frank Desideri, resided at the Residence before Plaintiff and his
      mother were tenants there. Deposition of Frank DeMichele, dated May 13, 2010
      ("DeMichele Depo. 5/13/10"), p. 228, lns. 3-12, a copy of which is attached to the
      Declaration of Fay Angela Jones, dated November 21, 2011 ("Jones Dec."), as Exhibit A.

5.    DKI concerning the truthfulness of the assertions. Furthermore, the assertions are
      Immaterial. Notwithstanding the foregoing, Plaintiff admits that Frank Desideri and his
      brother, Anthony Desideri, lived in the basement apartment at 1164 Edison Avenue, prior
      to the time when Plaintiff and his mother became tenants there.

6.    Deny, because the assertion is not supported by the record or admissible evidence.
      Furthermore, the assertions are Immaterial. Notwithstanding the foregoing, Plaintiff
      admits that prior to January 18, 2009, Plaintiff considered himself and Frank Desideri
      "good" friends. Id., p. 55, lns. 16-20. Plaintiff admits that prior to January 18, 2009,
      Plaintiff socialized with Frank Desideri. Id.

7.    Deny that "Frank Desideri frequently visited the Plaintiff at his basement apartment at
      1164 Edison Avenue, Bronx, New York," because the assertion is not supported by the
      record or admissible evidence. Furthermore, the assertions are Immaterial.
      Notwithstanding the foregoing, Plaintiff admits that Frank Desideri had visited Plaintiff's
      home, while Plaintiff resided at 1164 Edison Avenue, Bronx, New York. Id., pp. 227-
      228.

3

8.     Deny, because the assertions are not supported by admissible evidence. Notwithstanding the foregoing, Plaintiff admits that on January 18, 2009, Plaintiff drove a white 2008 BMW motor vehicle ("Plaintiff's Vehicle"). Id., pp. 14-15.  Plaintiff admits that his birthday is March 12, 1989.  Accordingly, on January 18, 2009, Plaintiff was 19 years old.

9.     DKI concerning the truthfulness of the assertions.  Therefore, questions of fact exist. Furthermore, the assertions are not supported by the record or admissible evidence. Notwithstanding the foregoing, the record in this case indicates that on or about January 18, 2009 a white Mercedes Benz, bearing NY registration EHH-6968, was registered to Nationwide Maintenance General Contracting.  See Case Report of Westchester County Department of Public Safety Detective Steven Fumuso, dated January 18, 2009, marked Plaintiff's Exhibit 2 ("Fumuso's Report), p. 9., a copy of which is appended to Plaintiff's Statement Pursuant to Local Rule 56.1 ("Pltnf. R. 56.1 Stmt."), as Exhibit 1.  On or about January 18, 2009, Nationwide Maintenance General Contracting was owned by Frank Desideri's mother, Marcie G. Manfredonia.  Id.

10.    Deny, because the assertions are overbroad and are not supported by the record or admissible evidence.  Therefore, questions of fact exist.   Notwithstanding the foregoing, Plaintiff admits that he drove the white Mercedes Benz, bearing NY registration EHH-6968, on one occasion, other than the night in question.  See DeMichele Depo. 5/13/10, p. 57, lns. 22-24.

11.    Deny, because the assertions are overbroad and are not supported by the record or admissible evidence.  Notwithstanding the foregoing, Plaintiff admits that on January 18, 2009, his girlfriend was Diana Brescia.  Id. 5/13/10, p. 58, lns. 22-24.  Plaintiff admits

that on January 18, 2009, Frank Desideri's girlfriend was Christina Ruocco. Id., p. 59, lns. 11-23. Plaintiff admits that he testified that on January 18, 2009, Diana Brescia and Christina Ruocco were friends. Id., p. 111, lns. 1-4.

12.    DKI concerning the truthfulness of the assertions. Furthermore, the assertions are Immaterial. Deny, because the assertion is not supported by admissible evidence. Notwithstanding the foregoing, Plaintiff admits that on January 18, 2009, four apartments at the Residence were rented. Id., p. 25, lns. 1-6.

13.    Deny, because the assertions are unclear and confusing. Notwithstanding the foregoing, Plaintiff admits that there were two entrances to the apartment where he resided. Id., p. 40, lns. 9-14. Plaintiff admits that the front door of his apartment faced Edison Avenue. Id., p. 40, lns. 15-17. The front door provided access to the main hallway of the building, the laundry room, and the other apartments. (This door will hereinafter be referred to as the "Front Door.") Id., p. 51-52. Plaintiff admits that the rear door, faced B Street. (This door will hereinafter be referred to as the "Rear Door.") Id., p. 41, lns. 11-12.

14.    Admit.

15.    Admit.

16.    Deny, because the assertion is not supported by admissible evidence. Notwithstanding the foregoing, Plaintiff admits that his apartment was the only apartment accessible through the Rear Door.

17.    Admit.

18.    Deny, because the assertions are not supported by admissible evidence. Notwithstanding the foregoing, Plaintiff admits that his apartment consisted of three bedrooms, a kitchen, living room and bathroom. Id., p. 48, lns. 1-25. Plaintiff admits that from the Rear Door

one enters the kitchen/living room. Id., p. 48, lns. 4-8. Plaintiff admits that from the kitchen/living room, one enters a hallway. Id., p. 48, lns. 9-12. Plaintiff admits that as one walks from the Rear Door, down the hallway, there is access to three bedrooms and one bathroom. Id., p. 48, lns. 9-14. Plaintiff admits that as one walks form the Rear Door, down the hallway, the bedrooms are on the left-side, and the bathroom is on the right-side. Id.

19.    Deny, because the assertions are not supported by admissible evidence. Notwithstanding the foregoing, Plaintiff admits that Plaintiff's bedroom was the closest bedroom to the Front Door. Id., p. 51, 114, lns. 9-11. Plaintiff admits that the Front Door provided access to the rest of the Residence. See ¶ 13, *supra.* Plaintiff admits that his bedroom had one window. See DeMichele Depo. 5/13/10, p. 50, lns. 1-19. Plaintiff admits that when looking at the Residence from the Rear Door, the window in his bedroom was on the left-side of the building. Id., p. 50, lns. 7-23.

20.    Admit.

21.    Admit.

22.    DKI concerning the truthfulness of the assertions. Furthermore, the assertions are Immaterial. Notwithstanding the foregoing, Plaintiff admits that he testified that on January 18, 2009, his mother and Marcie Manfredonia were friends.

23.    DKI concerning the truthfulness of the assertions. Furthermore, deny, because the assertions are not supported by admissible evidence. Plaintiff denies that the photograph attached to the Jones Dec. as Exhibit L is an accurate representation of Plaintiff as of January 18, 2009. In fact, the photograph attached to the Jones Dec. as Exhibit L is a copy of the photograph that appears on Plaintiff's driver's license. See DeMichele Depo.

6

5/13/10, p. 60, lns. 5-6. That photograph was taken approximately 3 years before his

arrest, when Plaintiff was only 16 years old. Id., p. 60, lns. 7-8. It is respectfully

submitted that the photographs of Plaintiff and Frank Desideri speak for themselves, and

create a question of material fact concerning the similarity, or lack thereof, in their

respective appearance. Notwithstanding the foregoing, and differences in height and

their respective weights, at his deposition, Plaintiff acknowledged that he and Frank

Desideri looked similar to each other. Id., p. 128, lns. 13-15.

24.     Deny, because the assertion is not supported by admissible evidence. Therefore, a

        question of fact exists. See Deposition of Diana Brescia, dated April 28, 2011 ("Brescia

        Depo. 4/28/11"), p. 91, lns. 17-19, a copy of which is annexed to the Declaration of Fay

        Angela Jones, Esq., dated November 21, 2011 ("Jones Dec.") as Exhbit C (Diana Brescia

        denied that she ever confused DeMichele and Desideri.)

25.     Deny, because the assertions are not supported by admissible evidence. Furthermore, the

        assertions are Immaterial. Notwithstanding the foregoing, Plaintiff admits that on the

        afternoon of Saturday, January 17, 2009, he and Diana Brescia left 1164 Edison Avenue,

        in Plaintiff's Vehicle. See DeMichele Depo. 5/13/10, pp. 63-64; p. 65, lns. 7-16. Admit

        that on January 17, 2009, Plaintiff and Ms. Brescia picked up Plaintiff's friend, Pete

        Chalmers, in Plaintiff's Vehicle. Id., p. 68, lns. 14-20. Admit that on January 17, 2009,

        Plaintiff, Ms. Brescia and Mr. Chalmers went to Tristanto Riveccio's house. Id. Admit

        that Frank Desideri and Christina Ruocco, were at Mr. Riveccio's house at the same time

        as Plaintiff, Ms. Brescia and Mr. Chalmers. Id., pp. 69-70.

26.     Deny, because the assertions are compound and confusing. Therefore questions of fact

        exist. Additionally, the assertions are not supported by admissible evidence. DKI

7

concerning the truthfulness of the assertions concerning individuals other than Plaintiff. Furthermore, the assertions are Immaterial. Notwithstanding the foregoing, Plaintiff admits that he, Ms. Brescia and Mr. Chalmers remained at Mr. Riveccio's house for about one hour. Id., pp. 66-68. Plaintiff admits that he, Ms. Brescia and Mr. Chalmers left Mr. Riveccio's house and drove to the movie theater, in New Rochelle, in Plaintiff's Vehicle. Id.

27. Deny that Plaintiff saw Frank Desideri driving the white Mercedes Benz. Id., p. 70, lns. 16-21. Notwithstanding the foregoing, Plaintiff admits that he observed a white Mercedes Benz at Mr. Riveccio's house. Id. (Plaintiff did not recall seeing Frank Desideri drive the white Mercedes Benz.) Id.

28. DKI concerning the truthfulness of the assertions. Deny, because the assertions are compound and not supported by admissible evidence. Furthermore, the assertions are Immaterial. Notwithstanding the foregoing, Plaintiff admits that he, Ms. Brescia and Mr. Chalmers left Mr. Riveccio's house and drove to the movie theater, in New Rochelle, in Plaintiff's Vehicle. See ¶ 26, *supra*. Admit that Christina Ruocco left Mr. Riveccio's house and drove to the movie theater in her own vehicle. See DeMichele Depo. 5/13/10, pp. 68-71. Admit that Mr. Riveccio and Mr. Desideri left Mr. Riveccio's house together. Id. Admit that Mr. Riveccio and Mr. Desideri had planned to meet Plaintiff, Ms. Brescia, Mr. Chalmers and Ms. Ruocco at the movie theater. Id.

29. Admit.

30. Deny, because the assertion is not supported by admissible evidence. DKI concerning the truthfulness of the assertions. Furthermore, the assertions are Immaterial.

31.  Deny because the assertions are not supported by admissible evidence. DKI concerning the truthfulness of the assertions.  Notwithstanding the foregoing, Plaintiff admits that he, Ms. Brescia and Mr. Chalmers arrived at the diner and were seated at a round table. Id., p. 74, lns. 1-9. Plaintiff admits that he, Ms. Brescia and Mr. Chalmers placed an order for food. Id. Plaintiff admits that Mr. Desideri, Ms. Ruocco and Mr. Rivieccio arrived at the diner approximately 10 minutes after Plaintiff, Ms. Brescia and Mr. Chalmers did. Id., p. 73, lns. 19-22.  Plaintiff admits that Mr. Desideri, Ms. Ruocco and Mr. Rivieccio sat at the same table as Plaintiff, Ms. Brescia and Mr. Chalmers. Id., p. 74, lns. 12-16. Plaintiff admits that he stayed at the diner for approximately 30-45 minutes. Id., p. 74, lns. 19-21.

32.  DKI concerning the truthfulness of the assertions.  Furthermore, the assertions are Immaterial.  Notwithstanding the foregoing, Plaintiff admits that Diana Brescia testified, in sum or substance, that Frank Desideri said earlier that evening, he and Mr. Riveccio took a car part and cellular telephone from someone named Rob. See Brescia Depo. 4/28/11, pp. 127-130.

33.  DKI concerning the truthfulness of the assertions.   Deny, because the assertions are not supported by the record or admissible evidence. Notwithstanding the foregoing, Plaintiff admits that he, Ms. Brescia, Mr. Chalmers, Ms. Ruocco, Mr. Desideri and Mr. Riveccio left the diner at the same time. See DeMichele Depo. 5/13/10, pp. 76-78. Plaintiff admits that he, left the diner with Ms. Brescia in Plaintiff's Vehicle and returned to the Residence. Id., p. 77, lns. 2-7. Plaintiff admits that Mr. Desideri, Mr. Riveccio, Mr. Chalmers and Ms. Ruocco left the diner in Mr. Desideri's vehicle. Id., p. 77, lns. 20-25; p. 78, lns. 1-3.

34.  Admit.

9

35.   Admit.

36.   Admit.

37.   Deny that the knock was on the Rear Door, because it is unsupported by admissible
      evidence. However, Plaintiff admits that he was in his bedroom, watching television,
      when he heard a knock on "the door." Id., p. 84, lns. 6-16. Plaintiff admits that his
      bedroom was the closest bedroom to the Front Door. See ¶ 19, *supra*.

38.   Admit.

39.   Deny that Frank Desideri went into Plaintiff's bedroom, because questions of fact exist.
      ·See DeMichele Depo. 8/25/10, p. 487, lns. 7-15 (Plaintiff saw Frank Desideri in his
      apartment, while Plaintiff was in the hallway.) Deny that Frank Desideri told Plaintiff
      and Ms. Brescia that "the cops are after him," because the assertion is not supported by
      admissible evidence.

40.   DKI concerning the truthfulness of the assertions.   Deny that the sounds of a helicopter
      emanated from Westchester County "Air2," because the assertion is not supported by
      admissible evidence. Notwithstanding the foregoing, Plaintiff admits that he heard the
      sound of a helicopter, when he was inside his bedroom.

41.   DKI concerning the truthfulness of the assertions.   Deny, because the assertion is not
      supported by admissible evidence. Notwithstanding the foregoing, Plaintiff admits that on
      January 18, 2009, he heard a loud knock or bang on the door.

42.   DKI concerning the truthfulness of the assertions.   Deny that the law enforcement
      personnel were looking for a suspect, because the assertion is unsupported by admissible
      evidence.

10

43.　Deny, because the assertion is not supported by admissible evidence and questions of fact exist. See ¶ 39, *supra*.

44.　The assertion is Immaterial. DKI concerning the truthfulness of the assertions. Deny, because the assertion is not supported in all by the citation to Ms. Brescia's deposition transcript, which testimony speaks for itself.

45.　Deny that Ms. Brescia went to the Rear Door, where Ms. Bonura was speaking with law enforcement personnel, because questions of fact exist. See Brescia Depo. 4/28/11, p. 44, lns. 19-25 (Brescia testified that she went to the door.) See also DeMichele Depo. 5/13/10, p. 90, lns. 20-21 (Plaintiff testified that Brescia was in his bedroom.)

46.　The assertion is Immaterial. DKI concerning the truthfulness of the assertions. Deny because the assertions are not supported by the record or admissible evidence. Additionally, questions of fact exist. Notwithstanding the foregoing, Plaintiff admits that he approached the Rear Door. DeMichele Depo. 5/13/10, p. 91, lns. 12-19.

47.　Admit.

48.　Deny, because the assertion is not supported by admissible evidence. Furthermore, the assertion is Immaterial.

49.　Deny, because the assertion is not supported by admissible evidence.

50.　Deny, because the assertions are not supported by admissible evidence. There is a question of fact concerning whether Plaintiff was "brought upstairs to the ground floor landing in the backyard of his residence by officers wearing New York Police Department uniforms."

51.   Deny, because the assertions are not supported by admissible evidence, and questions of fact exist.  Notwithstanding the foregoing, Plaintiff admits that his chest was placed upon a brick wall, and he was placed in handcuffs.

52.   Admit.

53.   Deny, because the assertion is not supported by admissible evidence.

54.   Deny, because the assertions are not supported by admissible evidence. Notwithstanding the foregoing, Plaintiff admits that Westchester County Department of Public Safety Police Officer Christian Gutierrez ("P.O. Gutierrez") placed one handcuff bracelet on one of Plaintiff's wrists.  Deposition of Christian M. Guterriez, dated January 6, 2011 ("Gutierrez Depo."), p. 35, lns. 6-20, a copy of which is attached to Jones Dec. as Exhibit F.

55.   Deny, because the assertion is not supported by admissible evidence.  In fact, P.O. Gutierrez admitted that once the handcuffs were set, they could contract.  Gutierrez Depo., p. 39, lns. 3-14.

56.   DKI concerning the truthfulness of the assertions.  Deny, because the assertions are not supported by admissible evidence.  Additionally questions of fact exist.  Notwithstanding the foregoing, Plaintiff admits that Westchester County Department of Public Safety Police Officer Mitchell Serlin ("P.O. Serlin") arrived at the Residence with his canine partner, Gracie.  Deposition of Mitchell Serlin, dated January 31, 2011 ("Serlin Depo."), p. 8, lns. 3-11, a copy of which is attached to Jones Dec. as Exhibit G.  (Officer Serlin testified that he did not recall the make and model of the vehicle that his canine partner used to obtain a scent. See Serlin Depo., p. 12, lns. 12-22.  Plaintiff's Vehicle was parked on B Street. See DeMichele Depo. 5/13/10, p. 78, lns. 17-18.)

57.     DKI concerning the truthfulness of the assertions. Deny, because the assertion is not
        supported by the record or admissible evidence. See Serlin Depo., p. 151, lns. 13-25; p.
        152, lns. 1-20.

58.     DKI concerning the truthfulness of the assertions. Deny, because the assertions are not
        supported by admissible evidence, and questions of fact exist. See DeMichele Depo.
        5/13/10, p. 147, lns. 16-21; pp. 177-178; see also ¶ 56, *supra.*

59.     Admit.

60.     Admit.

61.     Deny, because the assertions are not supported by the record or admissible evidence.
        Additionally, questions of fact exist. Notwithstanding the foregoing, Plaintiff admits that
        Robert Guerrerio identified the white Mercedes Benz used in the robbery. See Case
        Report of Westchester County Detective Steven Fumuso, dated January 18, 2009
        ("Fumuso Report"), p. 12, a copy of which is appended to Plntf. R. 56.1 Stmt. as Exhibit
        1 (Guerrerio told Det. Fumuso that he was not 100% sure that the Plaintiff was the one
        who robbed him.) See Deposition of John Fennel, dated September 23, 2011 ("Fennel
        Depo"), p. 71, ln. 4, a copy of which is appended to Pltnf. R. 56.1 Stmt. as Exhibit 28
        (outside the suggestive circumstances of the show-up, Guerrerio identified Desideri as the
        individual who robbed him.) Deposition of Frank DeMichele, dated May 13, 2010
        ("DeMichele Depo. 5/13/10"), pp. 175-176, a copy of which is appended to Pltnf. R. 56.1
        Stmt. as Exhibit 7 (police officers suggested to Guerrerio that Plaintiff was the one who
        robbed him.)

62.     Deny, because the assertions are not supported by the record or admissible evidence.
        Additionally, questions of fact exist. See DeMichele Depo. 5/13/10, p. 168, lns. 20-25; p.

169, lns. 1-16 (DeMichele testified that the officer said "We're not going to the precinct right away. We're going to go for a little ride. You're a piece of shit.")

63.   DKI concerning the truthfulness of the assertions.   Notwithstanding the foregoing, Plaintiff admits that P.O. Gutierrez testified that he began his tour of duty on January 17, 2009 at 11:59 p.m., and his tour ended on January 18, 2009 at 8:00 a.m.  Plaintiff admits that P.O. Gutierrez was assigned to patrol the lower Hutchinson River Parkway, in a "marked" vehicle.  Plaintiff admits that P.O. Gutierrez was assigned to "H1" or "Harry 1," identifying the lower Hutchinson River Parkway.  The record does not support the assertion that "P.O. Gutierrez was the only officer assigned to the vehicle."

64.   DKI concerning the truthfulness of the assertions.   Deny, because the assertions are not supported by admissible evidence.  Additionally, questions of fact exist.  Notwithstanding the foregoing, Plaintiff admits that P.O. Gutierrez testified that at approximately 12:35 a.m., on January 18, 2009, P.O. Gutierrez observed two vehicles, a white Mercedes Benz and a gray Audi.

65.   DKI concerning the truthfulness of the assertions.   Deny, because the assertions are not supported by admissible evidence.  Notwithstanding the foregoing, Plaintiff admits that P.O. Gutierrez testified that he attempted to effect a vehicle traffic stop.  See New York State Incident Report, dated January 17, 2009, marked Plaintiff's Exhibit 57, a copy of which is annexed to Plaintiff's Local Rule 56.1 Statement of Uncontroverted Facts ("Plaintiff's R. 56.1 Stmt."), as Exhibit 4.  Plaintiff admits that P.O. Gutierrez testified that the white Mercedes Benz and the gray Audi accelerated and began to weave in and out of traffic at a high rate of speed.  Id.  Plaintiff admits that P.O. Gutierrez testified that he transmitted a notification to Headquarters.

14

66.    DKI concerning the truthfulness of the assertions. Deny that Westchester County
       Department of Public Safety Police Officer Michael N. Brady ("P.O. Brady") "was the
       Tactical Flight Officer in Training," because the assertion is not supported by the record
       and/or admissible evidence. However, Plaintiff admits that the record indicates that Air 2
       responded to a request for assistance. See Det. Fumuso's Report, p. 1. Plaintiff admits
       that the record indicates that Air2 followed a white 2009 Mercedes Benz sedan, bearing
       NY registration EHH-6968. Id. Plaintiff admits that Westchester County Department of
       Public Safety Police Officer Christopher M. Lieberman ("P.O. Lieberman") testified that
       he was the pilot of Air2 on January 18, 2009, at approximately 12:30 a.m. Plaintiff
       admits that Westchester County Department of Public Safety Police Officer Richard E.
       Pucillo ("P.O. Pucillo") testified that he was a Tactical Flight Officer, in Air2, on January
       18, 2009, at approximately 12:30 a.m. Plaintiff admits that P.O. Lieberman testified that
       P.O. Brady was a Tactical Flight Officer, in Air2, on January 18, 2009, at approximately
       12:30 a.m. See Deposition of Christopher M. Lieberman, dated July 8, 2010
       ("Lieberman Depo."), pp. 32-33. Plaintiff admits that the record indicates that on
       January 18, 2009, P.O. Brady had not completed his training. Id.

67.    DKI concerning the truthfulness of the assertions. Deny, because the assertions are
       overly broad and terms have not been defined. Therefore, questions of fact exist.
       Furthermore, the assertions are not supported by admissible evidence. Notwithstanding
       the foregoing, Plaintiff admits that P.O. Lieberman testified that he observed a vehicle
       traveling at a high rate of speed, southbound on the Hutchinson River Parkway. The
       assertion that P.O. Brady and P.O. Pucillo assisted in "tracking" the vehicle is not
       supported by admissible evidence.

15

68.     DKI concerning the truthfulness of the assertions.  Deny, because the assertions are not

supported by the record or admissible evidence.  Additionally, questions of fact exist.

Notwithstanding the foregoing, Plaintiff admits that P.O. Lieberman testified that he

observed a marked Westchester County Police Vehicle attempting to stop what P.O.

Lieberman described as the "suspect vehicle."  See Westchester County Police Aviation

Unit Mission Request form, marked Plaintiff's Exhibit 41, a copy of which is attached to

Plaintiff's R. 56.1 Stmt., as Exhibit 6.  Plaintiff admits that P.O. Lieberman testified that:

the "suspect vehicle" reversed direction, first by backing up northbound in the

southbound lanes and fled striking a  Westchester County Department of Public Safety

vehicle.  Plaintiff admits that P.O. Lieberman reported a collision through a radio

transmission.

69.     DKI concerning the truthfulness of the assertions.  Deny, because the assertions are not

supported by the record or admissible evidence.  Additionally, questions of fact exist.

Notwithstanding the foregoing, Plaintiff admits that P.O. Lieberman testified that he

observed what he described as the "suspect vehicle," flee at a high rate of speed.  Plaintiff

admits that P.O. Lieberman testified that he observed the "suspect vehicle" continue onto

local streets and come to a stop at the rear of 1164 Edison Avenue, Bronx, NY.  Plaintiff

admits that P.O. Lieberman testified that he did not lose sight of the white Mercedes

Benz from the time he began to track it on the Hutchinson River Parkway, until it came to

rest on B Street.

70.     DKI concerning the truthfulness of the assertions.   Deny the assertions are not supported

by admissible evidence.  Therefore, questions of fact exist. Notwithstanding the

foregoing, Plaintiff admits that P.O. Lieberman testified that he observed the occupant of

16

the white Mercedes Benz exit the vehicle, walk on B Street and into the rear yard of the

Residence. Plaintiff admits that P.O. Lieberman testified that he, P.O. Pucillo and P.O.

Brady were the first law enforcement personnel to arrive at the Residence. Admit that

P.O. Lieberman testified that he transmitted the location of Air2 over the radio.

Lieberman Depo., p. 44, ln. 4. Admit that P.O. Lieberman testified that officers from the

Westchester Department of Public Safety arrived at the Residence, after Air2.

71.     DKI concerning the truthfulness of the assertions. Deny the assertions are not supported

        by admissible evidence. Therefore, questions of fact exist. See ¶ 56, *supra*. Deny that

        "P.O. Lieberman did not see the Plaintiff suspect led out of the building or to the

        vehicle," because the assertion is unclear and confusing. P.O. Lieberman initially said

        that he saw the suspect enter the rear of 1164 Edison Avenue. Witnesses on the ground

        testified that they could see Air2 and the spotlight on its belly, which illuminated the rear

        of the Residence. Consequently, it is incredulous that P.O. Lieberman did not see the

        Plaintiff led out of the Residence, or anything else that occurred on the ground

        subsequent thereto while Air2 hovered above. Plaintiff admits that P.O. Lieberman

        testified that he did not see police officers bring the suspect out of the Residence. See

        Lieberman Depo., p. 86, lns. 21-25.

72.     DKI concerning the truthfulness of the assertions. Deny, because the assertions are not

        supported by the record or admissible evidence. Notwithstanding the foregoing, Plaintiff

        admits that the record of this case indicates that Air2 has two front seats and five rear

        seats. Plaintiff admits that the record of this case indicates that P.O. Lieberman and P.O.

        Brady were sitting in the front seats. Plaintiff admits that the record indicates that P.O.

        Pucillo was seated in a rear seat. Plaintiff admits that Air2 was equipped with a video

17

recording device. Plaintiff admits that the record indicates that P.O. Brady was responsible for the operation of the video recording device.

73. Deny, because the assertions are not supported by the record or admissible evidence. See Lieberman Depo., p. 57, lns. 10-15. (P.O. Lieberman testified that the camera was working when Air2 first responded to the report of "a failure to comply.")

74. DKI concerning the truthfulness of the assertions. Deny that P.O. Tierney responded to a report of a failure to comply and drag racing reported by P.O. Gutierrez, at approximately 12:35 a.m., on January 18, 2009, because the assertion is not supported by admissible evidence.

75. DKI concerning the truthfulness of the assertions. Notwithstanding the foregoing, Plaintiff admits that P.O. Tierney testified, in sum or substance, that he parked his patrol vehicle at the end of the Westchester Avenue ramp of the Hutchinson River Parkway.

76. DKI concerning the truthfulness of the assertions. Notwithstanding the foregoing, Plaintiff admits that P.O. Tierney testified, in sum or substance, that traffic on the Hutchinson River Parkway began to slow down.

77. DKI concerning the truthfulness of the assertions. Notwithstanding the foregoing, Plaintiff admits that P.O. Tierney testified, in sum or substance, that he was advised by a police officer in Air2 that the suspect vehicle was stopped in the right lane of traffic.

78. DKI concerning the truthfulness of the assertions. Notwithstanding the foregoing, Plaintiff admits that P.O. Tierney testified, in sum or substance, that he turned his patrol car around, so his vehicle was facing northbound on the southbound shoulder.

18

79. DKI concerning the truthfulness of the assertions. Notwithstanding the foregoing, Plaintiff admits that P.O. Tierney testified, in sum or substance, that he drove his vehicle and met with the suspect vehicle on the shoulder of the Hutchinson River Parkway.

80. DKI concerning the truthfulness of the assertions. Deny that P.O. Tierney observed the "occupant" of the white Mercedes Benz, because the assertion is overbroad, ambiguous, and not supported by the record or admissible evidence. Notwithstanding the foregoing, Plaintiff admits that P.O. Tierney testified that he observed the occupant of the white Mercedes Benz.

81. DKI concerning the truthfulness of the assertions. Notwithstanding the foregoing, Plaintiff admits that P.O. Tierney testified, in sum or substance, that: the suspect vehicle reversed on the shoulder of the Hutchinson River Parkway; the suspect vehicle hit the patrol vehicle operated by P.O. Tierney and a third vehicle; and that the patrol vehicle operated by P.O. Tierney suffered minor damage to the corner of the front bumper.

82. DKI concerning the truthfulness of the assertions. Notwithstanding the foregoing, Plaintiff admits that P.O. Tierney testified, in sum or substance, that he lost sight of the suspect vehicle.

83. DKI concerning the truthfulness of the assertions. Notwithstanding the foregoing, Plaintiff admits that P.O. Tierney testified, in sum or substance, that he saw police officers from the NYPD.

84. DKI concerning the truthfulness of the assertions. Notwithstanding the foregoing, Plaintiff admits that P.O. Tierney testified, in sum or substance, that he walked from the front of the Residence towards the rear of the Residence. Plaintiff admits P.O. Tierney testified that while he was walking from the front of the Residence to the rear of the

19

Residence, P.O. Tierney saw P.O. Gutierrez, P.O. George Ruiz ("P.O. Ruiz") and P.O. Serlin. P.O. Tierney testified that he saw that the spotlight on Air2 was illuminated.

85.   DKI concerning the truthfulness of the assertions. Notwithstanding the foregoing, Plaintiff admits that P.O. Tierney testified, in sum or substance, that he saw uniformed NYPD officers at the Rear Door. Furthermore, P.O. Tierney testified, in sum or substance, that one officer at the Rear Door was wearing a white shirt.

86.   DKI concerning the truthfulness of the assertions. Notwithstanding the foregoing, Plaintiff admits that P.O. Tierney testified, in sum or substance, that he was directed by an NYPD officer in a white shirt, who P.O. Tierney believed was of Captain rank, to secure a side yard. Id., p. 55, lns. 6-10. Plaintiff admits that P.O. Tierney was asked to make an identification. Id., p. 62, lns. 3-16.

87.   DKI concerning the truthfulness of the assertions. Deny, because the assertions are not supported by the record or admissible evidence. Furthermore, there is a question of fact concerning the mis-identification, due to the poor lighting and unduly suggestive circumstances.

88.   DKI concerning the truthfulness of the assertions. Deny, because the assertions are not supported by the record or admissible evidence. Furthermore, there is a question of fact concerning which jurisdiction the officers represented.

89.   DKI concerning the truthfulness of the assertions. Deny, because the assertions are not supported by the record or admissible evidence. Deny, because the assertion is not supported by admissible evidence. Notwithstanding the foregoing, Plaintiff admits that P.O. Gutierrez testified that he told Plaintiff to "stop resisting."

90. DKI concerning the truthfulness of the assertion that P.O. Tierney "assisted law enforcement personnel from the County and NYPD in gaining control of Plaintiff's arms by using soft hand techniques to get Plaintiff's hands behind his back so that he could be handcuffed." Notwithstanding the foregoing, Plaintiff admits that he was placed against a brick wall in the rear yard of the Residence. Plaintiff admits that his wrists were placed in handcuffs while the front of his body was pressed against the brick wall.

91. Deny as the assertions are not supported by admissible evidence. Notwithstanding the foregoing, Plaintiff admits that P.O. Ruiz testified that he used the handcuffs to intentionally inflict pain on Plaintiff.

92. Deny the assertion as incomplete. See ¶ 144, *infra.*

93. DKI concerning the truthfulness of the assertion. Notwithstanding the foregoing, Plaintiff admits that Ms. Bonura filed a civilian complaint with the County of Westchester. Furthermore, Plaintiff admits that Det. Fumuso conducted an investigation.

94. DKI concerning the truthfulness of the assertion. Deny, because the assertions are not supported by admissible evidence. See ¶ 9, *supra.*

95. DKI concerning the truthfulness of the assertion. Notwithstanding the foregoing, Plaintiff admits that the record in this case indicates that on January 18, 2009, 1164 Edison Avenue, Bronx, NY, was owned by Marcie Manfredonia.

96. Deny, because the assertions are not supported by admissible evidence. Additionally, questions of fact exist.

97. Deny, because the assertions are not supported by the record or admissible evidence. See City Court of New Rochelle, Criminal Complaint against Frank DeMichele, dated January 18, 2009, marked Plaintiff's Exhibit 28, a copy of which is appended to hereto as

Exhibit 1  (Plaintiff was charged with aggravated assault on a police officer, assault in the second degree and resisting arrest.)  See also City Court of New Rochelle, Warrant for the Arrest of Frank DeMichele, dated January 20, 2009, marked Plaintiff's Exhibit 29, a copy of which is appended hereto as Exhibit 2 (a warrant for Plaintiff's arrest was issued by the City Court of New Rochelle.)

98.    Admit.

99.    Deny, because the assertion is not supported by admissible evidence.  Additionally, questions of fact exist.  See DeMichele Depo 8/25/10.

100.   DKI concerning the truthfulness of the assertion.  Furthermore, the assertion to which Westchester Defendants' refer, in itself creates a question of fact.

101.   Admit.

102.   DKI concerning the truthfulness of the assertion.  Deny, because the assertions are overbroad and not supported by the record or admissible evidence.  Notwithstanding the foregoing, Plaintiff admits that Westchester County Sergeant William T. McGuinness ("Sgt. McGuinness") arrived at the scene of Plaintiff's arrest after Plaintiff had been placed in handcuffs.

103.   DKI concerning the truthfulness of the assertion.

## PLAINTIFF'S ASSERTIONS OF DISPUTED FACTS IN RESPONSE TO WESTCHESTER DEFENDANTS' STATEMENT PURSUANT TO LOCAL RULE 56.1

Plaintiff respectfully requests that this document be read in conjunction with, and in addition to Plntf. R. 56.1 Stmt., and Plaintiff's Response to Defendant County of Westchester's R. 56.1 Statement of Facts, dated January 3, 2012.

### The Car Chase

104.   On January 18, 2009, Air 2 was equipped with a FLIR video camera (the "FLIR
camera").  See Westchester County Department of Public Safety Special Investigations
Unit report, marked Plaintiff's Exhibit 21 ("SIU Report"), p.P223 , a copy of which is
appended to Plntf. R. 56.1 Stmt. as Exhibit 2.

105.   The FLIR camera was capable of video recording events on the ground.  See Deposition
of Christopher M. Lieberman, dated July 8, 2010 ("Lieberman Depo."), a copy of which
is appended to Plntf. R. 56.1 Stmt. as Exhibit 3.

106.   Due to a lack of experience, and alleged "operator error" by Tactical Flight Officer, P.O.
Brady, there are no video images of the Car Chase or arrest of Plaintiff.  Id., p. 58, Ln.
20.  See also Id., p. 60, Ln. 3.

### The Arrest

107.   After Plaintiff was removed from his residence, he was passed from the officers at the
door to P.O. Gutierrez and P.O. Ruiz.  See Deposition of Christian Gutierrez, dated
January 6, 2011 ("Gutierrez Depo."), pp. 157-159, a copy of which is to Plntf. R. 56.1
Stmt. as Exhibit 10.  See also Deposition of George Ruiz, dated July 12, 2010 ("Ruiz
Depo."), pp. 42, ln. 25, a copy of which is appended to Plntf. R. 56.1 Stmt. as Exhibit 11.

108.   P.O. Tierney estimated that 20 to 30 NYPD officers were present at the Residence.  See
Amended Response to Notice Admit from the County of Westchester and individually
named County defendants, dated November 14, 2011 ("Westchester Admissions"), ¶2uu,
a copy of which is appended to Plntf. R. 56.1 Stmt. as Exhibit 12.

109.   P.O. Gutierrez estimated that 20 to 25 officers were present at the Residence.  See
Gutierrez Depo., pp. 105-106.

110.  P.O. Gutierrez estimated that 10 to 15 officers were present in the vicinity of the rear
      door.  Id., p. 106.

111.  Sgt. McGuinness arrived at the scene of Plaintiff's arrest with Westchester Police Officer
      Ellen Chadwick.  Deposition of William McGuinness, dated July 12, 2010 ("McGuinness
      Depo"), p. 73, a copy of which is appended to Plntf. R. 56.1 Stmt. as Exhibit 32.

112.  Sgt. McGuinness arrived at the scene of Plaintiff's arrest at approximately 1:12 a.m. on
      January 18, 2009.  Id., p. 123, lns. 4-6.

113.  Sgt. McGuinness admitted that Plaintiff was not wearing pants nor a long-sleeve shirt,
      when he was arrested.  Id., p. 13.

114.  While Plaintiff was in handcuffs, P.O. Tierney escorted Plaintiff out of the rear yard of
      the Residence, and onto B Street.  See Westchester County Department of Public Safety
      Special Investigations Unit Report, marked Plaintiff's Exhibit 21 ("SUI Report"), p.
      P230, a copy of which is appended to Pltnf. R. 56.1 Stmt. as Exhibit 2.

115.  While Plaintiff was in handcuffs, P.O. Gutierrez escorted Plaintiff out of the rear yard of
      the Residence, and onto B Street.  See Gutierrez Depo., p. 172, ln. 17.

116.  While Plaintiff was in handcuffs, P.O. Ruiz escorted Plaintiff out of the rear yard of the
      Residence, and onto B Street.  See Ruiz Depo, pp. 46-47.

117.  Sgt. McGuinness did not observe Plaintiff resisting arrest.  See McGuinness Depo., pp.
      288, lns. 18-20.

118.  Plaintiff testified that he was not resisting.  See Frank DeMichele 50-H Transcript, dated
      June 18, 2009 ("DeMichele 50-H"), p. 12, lns. 8-17, a copy of which is attached to Jones
      Dec. as Exhibit B.

119. Plaintiff told the officers that he did not do anything wrong. Id., p. 82, lns. 16-23. See also DeMichele Depo. 5/13/10, p. 107, lns. 12-13.

120. Plaintiff told the officers that they had arrested the wrong person. DeMichele Depo. 5/13/10, p. 141, lns. 12-21.

121. Plaintiff told the officers that the Mercedes was not his car. Id., p. 161, lns. 15-18.

122. In response to telling the officer that the Mercedes was not his car, Plaintiff was punched in the face, and he fell backwards. Id.

123. During the walk across the rear yard, Frank DeMichele fell onto the ground. See Deposition of Brian P. Tierney, dated July 7, 2011 ("Tierney Depo."), p. 115, ln. 3, a copy of which is appended to Pltnf. R. 56.1 Stmt. as Exhibit 13. See also DeMichele 5/13/10 Depo., p. 155.

124. The police officers pulled Frank DeMichele to a standing position, by using the handcuffs. See SIU Report, p. P228. See also DeMichele Depo. 5/13/10, p. 156, ln. 2.

125. When Plaintiff was seated in the Westchester County Department of Public Safety vehicle, P.O. Serlin saw blood on Plaintiff's face, in the area of his nose. See Deposition of Mitchell B. Serlin, dated January 31, 2011 ("Serlin Depo."), p. 31, ln. 19, a copy of which is appended to Pltnf. R. 56.1 Stmt. as Exhibit 16.

126. A Use of Force Report completed by P.O. Tierney, indicates that Plaintiff had scratches on his forehead. See Use of Firearms/Force Report, marked as Plaintiff's Exhibit 23, a copy of which is appended to Pltnf. R. 56.1 Stmt. as Exhibit 17.

127. A Use of Force Report completed by P.O. Gutierrez, indicates that Plaintiff had a scratch on his head. See Use of Firearms/Force Report, marked as Plaintiff's Exhibit 51, a copy of which is appended to Pltnf. R. 56.1 Stmt. as Exhibit 18.

25

128.    A Use of Force Report completed by P.O. Serlin, indicates that Plaintiff had a scratch on
        his head. See Use of Firearms/Force Report, marked as Plaintiff's Exhibit 56, a copy of
        which is appended to Pltnf. R. 56.1 Stmt. as Exhibit 19.

129.    The photograph marked Plaintiff's Exhibit 11, and appended to Plntf. R. 56.1 Stmt. as
        Exhibit 20, is a true and accurate depiction of how Frank DeMichele's face, wrist and
        knee appeared on or about January 18, 2009, at the 45th Precinct Stationhouse. See
        Affidavit of Frank DeMichele, dated November 21, 2011, ¶¶ 6-7, a copy of which is
        appended to Pltnf. R. 56.1 Stmt. as Exhibit 22.

130.    The photograph marked Plaintiff's Exhibit 12, and appended to Pltnf. R. 56.1 Stmt. as
        Exhibit 21, is a true and accurate depiction of how Frank DeMichele's hand and head
        appeared on January 20, 2009. Id., ¶ 8.

### The Showup

131.    Sgt. McGuinness was present when NYPD's alleged robbery victim, Robert Guerrerio,
        Jr., arrived at the scene of Plaintiff's arrest. McGuinness Depo., p. 114.

132.    Robert Guerrerio had allegedly been robbed more than four miles from the scene of
        Plaintiff's arrest. See Memorandum of Law in Support of City of New York's Motion
        for Summary Judgment, dated Nov. 21, 2011, p. 9.

133.    The showup occurred more than two hours from the time of the alleged robbery. See
        NYPD Unusual Occurrence Report, by NYPD Lt. Luis Crespo, dated January 18, 2009,
        marked Plaintiff's Exhibit 27, a copy of which is appended to Pltnf. R. 56.1 Stmt. as
        Exhibit 5.

134.    Sgt. McGuinness admitted that the showup was conducted while Plaintiff was seated in
        the rear of a police vehicle, with his arms in handcuffs behind his back. Id., pp. 112-113.

26

135.   At the Residence, Westchester Sgt. McGuinness and NYPD Capt. Urprasad spoke. McGuinness Depo., pp. 214-215.

136.   Sgt. McGuinness testified that "we came to the conclusion that—he advised me they [NYPD] wanted to take Mr. DeMichele for the robbery." Id.

Probable Cause

137.   At the time of Plaintiff's arrest, Westchester Defendants relied on P.O. Tierney's identification and the identification by the police dog, Gracie.  See NYS Incident Report, dated January 17, 2009, a copy of which is appended to Pltf. R. 56.1 Stmt. as Exhibit 4. See also City Court of New Rochelle, Criminal Complaint against Frank DeMichele, dated January 18, 2009, marked Plaintiff's Exhibit 28, a copy of which is appended to Plntf. Resp. Westchester R. 56.1 Stmt., as Exhibit 1.  See also City Court of New Rochelle, Warrant for the Arrest of Frank DeMichele, dated January 20, 2009, marked Plaintiff's Exhibit 29, a copy of which is appended to Plntf. Resp. Westchester R. 56.1 Stmt., as Exhibit 2.

138.   At the time of the arrest by Westchester Defendants, the mis-identification by Guerrerio had not yet occurred.

139.   Now, almost three years after Plaintiff's arrest, Westchester Defendants seek to rely on the mis-identification of Plaintiff, by Guerrerio, as the basis for probable cause.

The Investigation

140.   Plaintiff testified that Desideri was approximately two inches taller than he was. DeMichele Depo. 5/13/10, p. 128.

141.   Plaintiff also testified that on January 18, 2009, Frank Desideri weighed more than he did. Id.

27

142.   Exhibit L is a copy of the photograph that appears on Plaintiff's driver's license.  See
       DeMichele Depo. 5/13/10, p. 60, lns. 5-6.  That photograph was taken approximately 3
       years before his arrest, when he was only 16 years old.  Id., p. 60, lns. 7-8.

143.   Ms. Bonura told P.O. Serlin that they had arrested the wrong person.  Amended Response
       to Notice Admit (sic) from the County of Westchester, dated November 14, 2011
       ("Westchester Admissions"), ¶ 2ppp, a copy of which is appended to Pltnf. R. 56.1 Stmt.
       as Exhibit 12.

144.   Ms. Bonura told P.O. Serlin that, "a guy had run through her apartment, which she
       reluctantly stated was her landlord's kid."  Id., ¶ 2qqq.

145.   Westchester County Department of Public Safety Sergeant William T. McGuinness
       ("Sgt. McGuinness") told Det. Fumuso, in sum or substance, "that Mrs. DeMichele
       [Bonura] had said the person you're looking for is upstairs, or words to that effect."
       Deposition of Steven Fumuso, dated May 14, 2010, ("Fumuso Depo."), p. 139, ln. 10, a
       copy of which is appended to Pltnf. R. 56.1 Stmt. as Exhibit 23.

146.   McGuinness acknowledged that searching the house would have been the proper
       procedure.  See McGuinness Depo., p. 250, ln. 12.

147.   Within days of plaintiff's arrest, Det. Fumuso concluded that he did not believe that
       Plaintiff had committed the robbery in the Bronx.  See Fumuso Report, p. 13.

148.   Upon viewing photographs of Plaintiff and Frank Desideri, it was "apparent that
       'Frankie' [Desideri] and DeMichele were two different persons."  Id., p. 12.

149.   On or about January 22, 2011, Det. Fumuso spoke to NYPD Detectives Thomas Melican
       ("Det. Melican") and John Fennel ("Det. Fennel").  Fumuso Depo., p. 206.

150. The County of Westchester dropped all criminal charges against Plaintiff. <u>See</u> Fumuso Report, p. 19.

151. At the time of the arrest, Westchester Defendants failed to determine that the cellular telephone on the front seat of the Suspect Vehicle belonged to Frank Desideri.

152. When asked why no one at the scene of the arrest bothered to ascertain the identify of the owner of the cellular telephone, Det. Fumuso replied, "you can't just fuck around with a cell phone." Fumuso Depo., p. 65, ln. 8.

153. The lessor of the Suspect Vehicle was registered to Nationwide Maintenance General Contracting. Det. Fumuso Report, p. 000009.

154. Nationwide Maintenance General Contracting was owned by Frank Desideri's mother, Marcie Manfredonia. <u>Id.</u>

155. The owner of 1164 Edison Avenue was Marcie Manfredonia. <u>Id.</u>

156. An older unidentified gentleman arrived at the scene of Plaintiff's arrest, who identified himself as the owner of the Mercedes Benz (Suspect Vehicle). McGuinness Depo., pp. 168-169.

157. However, Westchester Defendants did not ascertain the identity of that individual. <u>Id.</u>, pp. 168-170.

"Cuff Control"

158. Westchester County Department of Public Safety General Order 41.01: Prisoner Transports; Searching/Handcuffing ("Gen. Order 41.01"), a copy of which is appended to Plntf. R. 56.1 Stmt. as Exhibit 14, states: "The handcuffs shall be secured upon the wrist and adjusted so as to prevent the prisoner from slipping out, but not so tight as to cause

29

discomfort or injury." A copy of Gen. Order 41.01 is appended to Pltnf. R. 56.1 Stmt. as Exhibit 14.

159.   P.O. Ruiz admitted that while Plaintiff was in handcuffs, P.O. Ruiz twisted the handcuffs, thereby applying pressure to Plaintiff's wrist, in order to "gain compliance." Ruiz Depo., pp. 84-87.

160.   Sgt. McGuinness agreed that "cuff control" entails pushing the handcuffs into a suspect's wrist, for the purpose of causing pain. McGuinness Depo., pp. 290-291.

161.   Sgt. McGuinness was not aware that with proper use handcuffs should not cause physical injury. Id., p. 295, lns. 18-25.

Malice

162.   Westchester Defendants believed that Plaintiff, as the driver of the Suspect Vehicle, had intentionally hit the vehicle driven by P.O. Tierney. See e.g. Lieberman Depo., p. 36, lns. 5-9

163.   Westchester Defendants erroneously believed that Plaintiff had led them on a high speed chase, and attempted to flee. Id.

164.   P.O. Gutierrez had a rush of adrenaline. See Deposition of Christian M. Gutierrez, dated January 10, 2011 ("Gutierrez Depo. 1/10/11"), p. 224, a copy of which is appended hereto as Exhibit 3.

165.   Plaintiff was placed against a brick wall. See SIU Report, p. 18 of 25. Gutierrez Depo., pp. 165-167. Ruiz Depo., pp. 41-42.

166.   P.O. Ruiz twisted handcuffs, thereby applying pressure to Plaintiff's wrist, in order to "gain compliance." Ruiz Depo., pp. 84-87.

Serious Physical Injuries

167.   When police officers lifted Plaintiff's approximately 200 pound body, by the handcuffs,

while his hands were restrained behind his back, it resulted in the tearing of Plaintiff's

labrum, which required shoulder surgery and several weeks of physical therapy.  See

Report of Jerry A. Lubliner, M.D., F.A.O.O.S., dated May 11, 2011 ("Lubliner Report"),

a copy of which is appended hereto as Exhibit 4.

168.   As a result of the physical beating he received, Plaintiff sustained serious and permanent

injuries, including, but not limited to:

    a.   internal derangement of the shoulder

    b.   labral tear, requiring surgical intervention

    c.   shoulder impingement

    d.   carpal tunnel syndrome

    e.   bilateral wrist sprain/pain

    f.   right wrist tenosynovitis

    g.   bruising and scarring to wrists

    h.   bruises, scarring and contusions to plaintiff's head

    i.   cervical disc syndrome

    j.   C5-C6 and C6-C7 radiculopathy

    k.   straightening of the upper and mid cervical curvature

    l.   cervical spine syndrome

    m.   cervical radiculitis

    n.   cervical spine strain/sprain

    o.   cervical spine myofascitis

    p.  cervical whiplash syndrome

    q.  cervical spine brachial neuritis/radiculitis

    r.  thoracic spine strain/sprain

    s.  thoracic spine myofacitis

    t.  lumbar disc syndrome

    u.  lumbar radiculitis

    v.  lumbar spine strain/sprain

    w.  lumbar spine myofacitis

    x.  lumbar compression

    y.  lumbosacral radiculitis

    z.  contusions to legs

    aa. left hip strain/sprain

    bb. muscle spasms

    cc. post-traumatic stress disorder

    dd. sleeplessness

    ee. anxiety

    ff.  post-traumatic headaches

    gg. nausea and dizziness; and,

    hh. sensitivity to light.

See Medical Records, stamped Plntf. Meds. 1 - 328 ("Med. Rcds."), a copy of which is

appended to Plntf. Resp. Westchester R. 56.1 Stmt., as Exhibit 5. See also Lubliner Report.

(Plaintiff suffers from permanent physical injuries as a result of the incident on January 18,

2009.) Report of Anthony Lerro, CSW, dated August 17, 2011, a copy of which is appended

to Plntf. Resp. Westchester R. 56.1 Stmt., as Exhibit 6 (Plaintiff suffers from Post-Traumatic Stress Disorder as a result of the incident on January 18, 2009.)  See also photographs of injuries, copies of which are annexed to Plntf. R. 56.1 Stmt. as Exhibits 20 and 21.